UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Western Division (Raleigh)
Case No. 5:14-cv-365

| | |
|---|---|
| Stephen Thomas Yelverton<br>1730 North Lynn St., #A22<br>Arlington, VA 22209<br><br>Plaintiff<br><br>v.<br><br>Yelverton Farms, Ltd.<br>145 Edmundson Springs Rd.<br>Fremont, NC 27830<br><br>and<br><br>Phyllis Y. Edmundson<br>145 Edmundson Springs Rd.<br>Fremont, NC 27830<br><br>Defendants | VERIFIED<br>AMENDED COMPLAINT OF RIGHT<br><br><br><br><br><br>DEMAND FOR A JURY TRIAL<br>ON COMMON LAW CLAIMS |

COMES NOW, Plaintiff Stephen Thomas Yelverton, a resident of Arlington County, Virginia, and pursuant to FRCP, Rule 15 (a), hereby Amends of Right this action in Diversity against Defendants, Yelverton Farms, Ltd., a North Carolina closely-held corporation, and its President and controlling stockholder, Phyllis Y. Edmundson, who is a North Carolina resident, where the Defendants have not yet been served, to add a Claim for a Declaratory Judgment under 28 U.S.C. 2201 and 2202 to declare that Wade H. Atkinson, Jr., who is a District of Columbia resident, shall have Article III "standing" for Joinder as a co-Plaintiff, and where Diversity would be maintained by his Joinder and where the amount in controversy exceeds $75,000.

All the alleged acts and transactions occurred in, and the alleged causes of actions arose in, Wayne County, and all the Defendants reside in or do business in Wayne County, and thus the Western Division in Raleigh is the required Venue as per Local Civil Rules, Rule 40.1 (b) and (c)(1) and (2), where the case shall be heard.

The claims herein have <u>never</u> been adjudicated to a final decision in this or in any other Court, and where Res Judicata is <u>not</u> applicable, and where all the claims herein arose <u>after</u> the filing of other claims, or where they could <u>not</u> have been filed in the D.C. Domestic or Bankruptcy Courts. <u>Restatement (Second) Judgments</u>, Section 26 (1)(c).

## Allegations of Fact

1. Yelverton established Yelverton Farms, Ltd., in 1994 for the purpose of growing pigs under a Production Contract with Maxwell Foods, Inc./ Goldsboro Hog Farms, Inc., which is affiliated with Smithfield Foods, Inc.

2. Yelverton personally and individually invested in 1994 at least $700,000, to build the required infrastructure for the automated "pig finishing" operation, which does <u>not</u> include land costs. These facilities were built on land Leased to the corporation.

3. Yelverton individually signed in 1994 on behalf of himself a Production Contract with Maxwell/Goldsboro, to engage in pig production using the facilities of Yelverton Farms, Ltd., which he funded. Yelverton is required by the Contract to provide management oversight of the operation, and to assure performance by it.

4. Yelverton is the sole signatory on the Production Contract and is designated as the sole Grower. Edmundson is <u>not</u> a signatory to this Contract, and personally knows that Yelverton is the sole signatory and knows that he has specified duties to perform under this Contract, and knows that she is <u>not</u> a signatory.

5. Yelverton, as Principal, delegated to Edmundson and to Yelverton Farms, Ltd., some management duties under the Production Contract, as his Agent.

6. In November 2007, Yelverton obtained a $360,000, loan from his business partner, Wade H. Atkinson, Jr., where in a Security agreement, Yelverton pledged as collateral his 1,333.3 shares of stock in Yelverton Farms, Ltd.

7. Edmundson, as an officer of Yelverton Farms, Ltd., had physical custody of the stock certificates and refused to allow Atkinson to have possession to be collateral for his loan. She was opposed to the stock being used as collateral, and to him being an owner.

8. In April 2008, White & Allen, P.A., as counsel for Atkinson recorded a U.C.C. lien in North Carolina on the 1,333.3 shares of stock. This law firm also at the same time represented Edmundson with respect to her interests in Yelverton Farms, Ltd., which were and continue to be "materially adverse" to the interests of Atkinson.

9. Yelverton will voluntarily pay Atkinson at least $80,000, from any proceeds he might receive from a Liquidation of the corporate assets by a Receiver, pursuant to N.C. General Statutes, Section 55-14-30, 55-14-31, and 55-14-32.

10. On May 14, 2009, Yelverton filed for Chapter 11 Bankruptcy in the District of Columbia in Case No. 09-00414. He scheduled his 1,333.3 shares of stock in Yelverton Farms, Ltd., as property of the Debtor Estate. However, after conversion to Chapter 7 on August 20, 2010, the Trustee failed to accept possession of the stock as property of the Estate, and where Edmundson acted to retain possession of the stock as her being owner.

11. Yelverton also scheduled the Production Contract as property of the Debtor Estate, but subsequently Exempted it, per 11 U.S.C. 522. The Chapter 7 Trustee has expressed no interest in the Production Contract, and makes no claim to it.

12. On July 29, 2009, Yelverton filed his lawsuit in Case No. 5:09-cv-331 in the U.S. District Court for the Eastern District in Raleigh, for claims against Edmundson and Yelverton Farms, Ltd., which arose prior to May 14, 2009.

13. These claims were for the Receivership of Yelverton Farms, Ltd., under N.C. General Statutes, Section 14-55-30 (2)(ii), 14-55-31 (d), and 14-55-32, or in the alternative, a mandatory buy-out by Edmundson, where Yelverton's stock had a "fair value" of at least $300,000, and for claims for amounts owed to Yelverton by the corporation for declared profits and for land rents, which were at least $75,000, and for Tort claims against Edmundson of at least $2.4 Million.

14. In order to defeat these claims, Edmundson executed an Affidavit, dated August 20, 2009, where she as a controlling stockholder admitted to owing "fiduciary" duties to Yelverton, and swore she would not breach her duties to Yelverton, and swore she would act to "carry on" the corporate business and "preserve the assets of the corporation" for the benefit of Yelverton, which includes the Lease of land owned by her.

15. The Lease of land to Yelverton Farms, Ltd., was to expire on December 31, 2013, but with no renewal by Edmundson as the owner of the land, and as the President and controlling stockholder of the corporation, the pig production facilities on this land, which Yelverton had invested $700,000 to build, would revert to Edmundson's sole ownership to the exclusion of the corporation and to Yelverton.

16. Since December 31, 2013, Edmundson as President and controlling stockholder of Yelverton Farms, Ltd., has refused to renew the Lease of her land to the corporation, which is essential to its business operations, and has acted with the intent to destroy the value of the corporation by her non-renewal.

17. In late January 2014, Yelverton as the sole holder of the Production Contract, received from an experienced and financially qualified operator a "letter of interest" to acquire the pig production facilities at Yelverton Farms, Ltd., for some $1.2 Million, exclusive of the surrounding land. This interest in purchasing is subject to the Lease of land for the pig production facilities being renewed by Edmundson.

18. Yelverton presented the "letter of interest" to Edmundson and offered to equitably share with her the proceeds from a sale. She rejected Yelverton's proposal.

19. Edmundson rejected the proposal from Yelverton in March 2014 because in her words she would do <u>nothing</u> to help Yelverton, and because she wanted all the proceeds from a $1.2 Million sale of the pig production facilities for herself.

20. Edmundson told Yelverton in March 2014 through intermediaries that she will <u>not</u> deal with or help him in any respect as to his interests in the corporation, or a holder of the Production Contract, and did so in violation of her Affidavit, dated August 20, 2009, promising to protect his financial interests in the corporation.

21. Edmundson's continuing refusal to renew the Lease of the land to Yelverton Farms, Ltd., is for the purpose of her receiving all of the proceeds from any sale of the pig production facilities for some $1.2 Million, which would be to the financial detriment of Yelverton's equity interest in the corporation and as holder of the Production Contract, and would be to the financial detriment of Atkinson, as a U.C.C. lien holder on the stock.

22. Since at least April 7, 2014, Edmundson has acted with the intent to have terminated Yelverton's Production Contract with Maxwell/Goldsboro, in order for her to obtain it for her personal financial benefit, and to the exclusion of Yelverton, and did so by providing negative information about him to Maxwell/Goldsboro.

23. Edmundson has acted with the intent to prevent Yelverton from having any role in the sale of the pig production facilities, and to prevent him from receiving any proceeds from such a sale, where he has personally invested at least $700,000.

24. Since at least April 7, 2014, Edmundson has acted with the intent to cause to be withdrawn the January 2014 "letter of interest" in purchasing the pig production facilities made to Yelverton, and did so in order for only herself to sell the pig production facilities and receive all the proceeds of some $1.2 Million.

25. Edmundson has caused to be filed Federal tax returns for Yelverton Farms, Ltd., and Schedule K-1 for tax year 2012, wherein it was acknowledged that Yelverton is at least a 24.9% stockholder in Yelverton Farms, Ltd., and that he is owed at least $8,262 in declared profits from the corporation. Yelverton has <u>not</u> been paid these and other declared profits owed to him from the corporation because Edmundson has prevented it.

26. Edmundson as the President and controlling stockholder of Yelverton Farms, Ltd., has represented and caused to be submitted to the U.S. Bankruptcy Court in the District of Columbia in Case No. 09-00414, on or about June 18, 2012, representations that the corporation is financially troubled, is insolvent, has <u>no</u> funds to pay Yelverton, or any stockholder, what is owed to them in declared profits, that the corporation has <u>no</u> value, that there are <u>no</u> purchasers for it, and that it is <u>not</u> sellable at any price.

27. Edmundson's claims that the corporation and the pig production facilities have <u>no</u> value and there would be <u>no</u> purchasers for it, are wholly contradicted by the January 2014 "letter of interest" from an experienced and financially qualified operator to purchase the pig production facilities for some $1.2 Million, exclusive of the surrounding land, which Yelverton received as the holder of the Production Contract.

28. Yelverton is <u>not</u> alleging any facts or causes of action against Maxwell/Goldsboro, or their affiliates.

29. Yelverton's lawsuit in Case No. 5:09-cv-331 was <u>never</u> litigated as to any claims, and is <u>not</u> final. It was referred by this District Court to the Bankruptcy Court in D.C. for Settlement, even though Edmundson is <u>not</u> a Creditor, but the Settlement is <u>not</u> final and has <u>not</u> been consummated. See, EDNC <u>Minute Order</u>, entered January 26, 2012, and <u>Order</u>, entered July 17, 2012.

30. In Case No. 5:09-cv-331, Edmundson made the claim on March 17, 2010, that Atkinson is, or may be, the owner of stock in Yelverton Farms, Ltd., and she repeated this claim in other Federal proceedings, and did so to unnecessarily delay and multiply these proceedings to gain a litigation advantage and to obtain a personal financial benefit.

31. On March 28, 2014, Atkinson executed an Affidavit, where he declared that he has <u>never</u> been a stockholder in Yelverton Farms, Ltd., that Edmundson and her co-Defendants <u>never</u> obtained his consent to claim him as a stockholder and did <u>not</u> act in his interests in making such claims, and that if he is considered to be a stockholder by them, he favors putting the corporation into Receivership.

<u>Controlling Law as to the Complaint under the Allegations of Fact</u>

32. North Carolina law requires that a demand for Receivership of a closely-held corporation, under N.C. General Statutes, Section 55-14-30, 55-14-31, and 55-14-32, be expeditiously heard and acted upon "one way or the other." This is done in equity <u>without</u> a Jury Trial, and with limited discovery. <u>Marzec v. Nye</u>, 203 N.C. App. 88, 690 S.E.2d 537, 544-545 (N.C. App. 2010).

33. Under N.C. General Statutes, Section 55-14-30 (2)(i), a Receivership is required where there is a "corporate deadlock" of those in "control of management." With Yelverton in legal control of the Production Contract, but with Edmundson in control of the physical production facilities, there is a "deadlock" to the detriment of the corporation, where both working in harmony are necessary for the business to viably operate.

34. Under N.C. General Statutes, Section 55-14-30 (2)(ii), a Receivership is required where it would be "reasonably necessary to protect the rights and interests" of a minority stockholder. With Edmundson breaching her "fiduciary" duties to Yelverton, a Receivership would necessary.

35. Under N.C. General Statues, Section 55-014-30 (2)(iv), a Receivership is required to prevent "waste" to the corporation and its assets. With Edmundson, as President and controlling stockholder of the corporation, seizing ownership of the physical production facilities from the corporation after December 31, 2013, by refusing to renew the Lease, she has caused "waste" to the corporation and its assets, to the detriment of the corporation, and to Atkinson as a U.C.C. lien holder.

36. Under N.C. General Statutes, Section 55-14-30 (3)(ii), a Receivership is required where the corporation is unable to pay its Creditors, and a Creditor has "standing" to bring an action where the debt is a definite amount and in writing, and where there are admissions by the corporation of "insolvency." With Yelverton being owed a definite amount by Yelverton Farms, Ltd., in declared 2012 profits, and Edmundson admitting to the Bankruptcy Court in 2012 that the corporation is "insolvent" and unable to pay Yelverton, there is "standing" by Yelverton as a Creditor.

37. The corporation is moreover "insolvent," by Edmundson taking personal ownership of all its assets after December 31, 2013, with her refusing to renew the Lease of land to the corporation, which includes the pig production facilities.

38. "Allegations that the majority shareholder 'squeezed' a minority shareholder out of his right to participate in the business of a closely-held corporation, and misappropriated the business of the corporation for herself, states a claim for injuries to the minority shareholder" for breach of "fiduciary" duties, and where the minority has the right to maintain an individual suit against the majority. Norman v. Nash Johnson & Sons Farms, Inc., 140 N.C. App. 390, 537 S.E.2d 248, 254-256 and 261 (N.C. App. 2000).

39. A "majority shareholder in a closely-held corporation owes a fiduciary duty and obligation of good faith to a minority shareholder, and fraud or mismanagement is not essential to the application of this Rule," and "once a minority shareholder challenges the fairness of actions taken by the majority, the burden shifts to the majority to establish that its actions were in all respects inherently fair to the minority and taken in good faith." Loy v. Lorm Corp., 52 N.C. App. 428, 278 S.E.2d 897, 901-903 (N.C. App. 1981). See also, Farndale v. Gibellini, 628 S.E.2d 15, 19-22 (N.C. App. 2006).

40. The refusal of Edmundson as President of Yelverton Farms, Ltd., and controlling stockholder, to renew the Lease of her land to the corporation, after December 31, 2013, in order for her to personally own the pig production facilities and thus to receive all proceeds from a sale, is a breach of her "fiduciary" duties to the corporation, under the laws of North Carolina.

41. Conduct which constitutes a breach of "fiduciary" duties, or an "inequitable assertion of power and position" is sufficient to support a claim under the Unfair and Deceptive Trade Practices Act of N.C. General Statutes, Section 75-1.1. <u>Compton v. Kirby</u>, 157 N.C. App. 1, 577 S.E.2d 905, 917 (N.C. App. 2003).

42. The protections of the UDTP extend to business contexts where there is breach of a fiduciary relationship. <u>Dalton v. Camp</u>, 548 S.E.2d 704, 710-711 (N.C. 2001).

43. The actions of Edmundson are breaches of her "fiduciary" duties to Yelverton, both as her being a controlling stockholder and as an Agent for Yelverton, with respect to the Production Contract, and were done in a business context.

44. The key elements of Tortuous Interference with a Contract or a Prospective Business Relation is intentionally inducing or causing a party <u>not</u> to perform on the contract or to enter into a contract, and interfering with <u>no</u> justification. <u>United Laboratories, Inc. v. Kuykendall</u>, 370 S.E.2d 375, 387 (N.C. 1988).

45. Edmundson has <u>no</u> justification to intend to cause the termination of Yelverton's Production Contract, or to intend to prevent him from entering into a purchase contract to sell the pig production facilities, and she is doing so to obtain all the proceeds for herself from a sale of the pig production facilities, and to prevent Yelverton from obtaining any proceeds for his investment of at least $700,000, in the pig production facilities, and where she is acting in breach of her "fiduciary" duties to Yelverton, as his Agent with respect to the Production Contract, as per her Affidavit, dated August 20, 2009.

46. The "conversion" of a contract may be found where there is a Tortuous act committed by the Defendant, in addition to the elements of "conversion." <u>Tudor Associates v. AJ and AJ Servicing</u>, 843 F.Supp. 68, 75 (E.D.N.C. 1993). Edmundson committed a breach of her '"fiduciary" duty of loyalty to Yelverton as his Agent, which is a Tort, by acting to take control, possession, and ownership of his Production Contract.

Causes of Action

(a) <u>Malicious Interference and Conversion by Edmundson of Yelverton's Production Contract and Malicious Interference with his Prospective Business Relations</u>

47. Paragraphs 1-46 are incorporated herein, and it is alleged that after April 7, 2014, Edmundson maliciously interfered with Yelverton's Production Contract with Maxwell/Goldsboro, and maliciously interfered with an interest in purchasing the pig production facilities, in acting to have them terminated by causing negative information about Yelverton to be submitted, and Edmundson did so with <u>no</u> legitimate justification, but to be able to take for herself the Production Contract and all proceeds from a sale of the pig production facilities, and to deny to Yelverton any proceeds for his equity investment of at least $700,000, in the pig production facilities, and Edmundson did so in breach of her "fiduciary" duties to Yelverton as President and controlling stockholder of the corporation and as his Agent, as sworn to in her Affidavit, dated August 20, 2009, and under North Carolina law.

48. The value of Yelverton's interest in the Production Contract and pig production facilities is at least $700,000, and he has been monetarily damaged in at least that amount, and demands at least $700,000 in Compensatory Damages from Edmundson.

### (b) Breach of Fiduciary Duties by Edmundson to Yelverton

49. Paragraphs 1-46 are incorporated herein, and it is alleged that on and after December 31, 2013, Edmundson as President of Yelverton Farms, Ltd., and its controlling stockholder, acted to breach her "fiduciary" duties to the corporation, and to Yelverton, as sworn to in her Affidavit, dated August 20, 2009, by <u>not</u> renewing the Lease of land to the corporation, and did so for the purpose of taking ownership for herself of the pig production facilities in order to receive all the proceeds from a sale, and to "squeeze out" Yelverton from the corporation.

50. The value of Yelverton's equity in Yelverton Farms, Ltd., is at least $700,000, and he has been monetarily damaged in at least that amount, and demands at least $700,000, in Compensatory Damages from Edmundson.

### (c) Violation of the Unfair and Deceptive Trade Practices Act by Edmundson

51. Paragraphs 1-46 are incorporated herein, and it is alleged that on and after December 31, 2013, Edmundson as President and controlling stockholder of Yelverton Farms, Ltd., and as sworn to in her Affidavit, dated August 20, 2009, and under North Carolina law, breached her "fiduciary" duties to Yelverton by refusing to renew the Lease of land to the corporation, and by acting to have Yelverton's Production Contract and the interest in purchasing the facilities terminated, in order for her to obtain all the sale proceeds for her personal benefit, and thereby violated N.C.G.S., Section 75-1.1.

52. The value of Yelverton's equity in Yelverton Farms, Ltd., is at least $700,000, for his investment in the pig production facilities, and he has been monetarily damaged in at least that amount, and demands at least $700,000, in Compensatory Damages from Edmundson, with Treble Damages under N.C.G.S., Section 75.1-1 of $2.1 Million.

### (d) Judicial Receivership of Yelverton Farms, Ltd.

53. Paragraphs 1-46 are incorporated herein, and it is demanded Yelverton Farms, Ltd., be placed into Receivership, pursuant to N.C.G.S., Sections 55-14-30 (2)(i), (ii), and (iv) and 3 (ii), 55-14-31 (a)-(d), and 55-14-32 (a)-(e), where Yelverton has "standing" as a Creditor to the corporation, and where he is owed at least $8,262, in declared profits, which is income received post-Bankruptcy petition, where the Chapter 7 Trustee has no legal interest and no right of involvement.

54. Yelverton moreover would be owed at least $700,000, in proceeds from any future sale of the assets of the corporation by a Receiver, and where such proceeds would be for the benefit of his Non-Discharged Creditors in Bankruptcy Case No. 09-00414, where the Chapter 7 Trustee has no legal interest and no right of involvement, with respect to Non-Discharged Creditors.

55. The Receivership is only with respect to Yelverton Farms, Ltd., as a corporate entity, which is not in Bankruptcy, is not included in Yelverton's Debtor Estate, and the Production Contract is not included in Yelverton's Debtor Estate.

### (e) Request for Declaratory Judgment per FRCP, Rule 57

56. Paragraphs 1-46 are incorporated herein, and it is alleged that Edmundson intentionally acted to cause "injury" to Yelverton by her making continuing claims on and after March 17, 2010, and through the present, in this and other Federal proceedings that Atkinson is or may be the owner of stock in Yelverton Farms, Ltd., which had the effect of unnecessarily delaying and multiplying the Federal proceedings to the detriment of Yelverton, and resulted in an unfair litigation advantage to Edmundson and her co-Defendants.

57. A Declaratory Judgment is requested, pursuant to 28 U.S.C. 2201, that if Edmundson and her co-Defendants fail to renounce and withdraw their claims made in Case No. 5:09-cv-331 and in other Federal proceedings, that Atkinson is or may be the owner of stock in Yelverton Farms, Ltd., that a Declaratory Judgment be granted declaring that Atkinson shall have Article III "standing" and be allowed the right of Joinder as a co-Plaintiff in this proceeding in Case No. 5:14-cv-365, to pursue and enforce his rights as to Receivership of Yelverton Farms, Ltd., pursuant to N.C.G.S., Sections 55-14-30 (2), 55-14-31, and 55-14-32, as per his Affidavit, executed March 28, 2014, which statutory rights Edmundson and her co-Defendants have conceded to him by continuously claiming him as a stockholder in the corporation from March 17, 2010, to the present.

58. Injunctive relief is requested, pursuant to 28 U.S.C. 2202, to enjoin Edmundson and her co-Defendants, and any other persons, from interfering with Atkinson's pursuit of his interests with respect to Yelverton Farms, Ltd., where such interests have been conceded to him.

59. Atkinson is <u>not</u> in Bankruptcy, and is <u>not</u> a Debtor, and is making <u>no</u> claims against the Debtor Estate of Yelverton, but rather would only be for Receivership of Yelverton Farms, Ltd., as a corporate entity, which is <u>not</u> in Bankruptcy and is <u>not</u> included within the Debtor Estate of Yelverton.

### Other Relief

60. A Trial by Jury is Demanded on all Common Law claims, and all other appropriate Relief under the laws of North Carolina and the United States is requested.

14
Case 5:14-cv-00365-FL   Document 17   Filed 07/18/14   Page 14 of 16

61. It is requested that pursuant to Local Civil Rule, Rule 72.2 (a), this proceeding shall be assigned to a Federal Magistrate Judge in the Western Division in Raleigh for all pre-Trial matters, and for an immediate Hearing on the Receivership of Yelverton Farms, Ltd.

WHEREFORE, in view of the foregoing, this Verified Amended Complaint of Right is submitted.

## VERIFICATION

I hereby Affirm and Verify, under penalty of perjury, that the foregoing allegations of fact in this Amended Complaint are true and correct to the best of my knowledge and belief, and are believed in Good Faith to be true, and that this complaint is filed in Good Faith to protect my legal, financial, and property rights, as to claims and causes of action arising after August 8, 2013, that have <u>not</u> previously been heard and adjudicated in a final decision with Res Judicata effect in any Court, and where the claims and causes of action arose long after May 14, 2009, the date of my petition for Bankruptcy, and thus I have unqualified ownership of these claims and causes of action, and thereby have unqualified Article III "standing" as the Plaintiff to pursue them.

*[signature]* 7-18-14

This the 18th day of July, 2014,

Respectfully submitted,

*[signature]*
Stephen Thomas Yelverton, Pro Se,
1730 North Lynn St., #A22
Arlington, VA 22209
Mobile Tel. No. 202-702-6708
Computer Fax No. 202-403-3801
E-Mail: styelv@aol.com

## CERTIFICATE OF SERVICE

I, Stephen Thomas Yelverton, Pro Se, hereby certify that a copy of this Verified Amended Complaint of Right was served on the 18th day of July, 2014, by U.S. Mail. First Class, postage pre-paid, to:

Phyllis Y. Edmundson
145 Edmundson Springs Rd.
Fremont, NC 27830
Tel. 919-242-5685

Yelverton Farms, Ltd.
c/o Phyllis Y. Edmundson, President
145 Edmundson Springs Rd.
Fremont, NC 27830
Tel. 919-242-5685

Stephen Thomas Yelverton, Pro Se