IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CV-365-FL

| | | |
|---|---|---|
| STEPHEN THOMAS YELVERTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| YELVERTON FARMS, LTD. and | ) | |
| PHYLLIS Y. EDMUNDSON, | ) | |
| | ) | |
| Defendants. | ) | |

This case comes before the court on three motions by plaintiff Stephen Thomas Yelverton ("plaintiff"): (1) a motion (D.E. 27) to disqualify counsel for defendants Yelverton Farms, Ltd. ("Yelverton Farms") and Phyllis Y. Edmundson ("Edmundson") (collectively "defendants"); (2) a motion (D.E. 39) for a hearing on his motion to disqualify counsel; and (3) a second motion (D.E. 44) for a hearing on his motion to disqualify, including a request that his disqualification motion be resolved prior to the resolution of pending dispositive motions. For the reasons set forth below, the motions will be denied.

## BACKGROUND

Plaintiff, proceeding *pro se*, commenced this action against defendants on 24 June 2014 by filing a motion to proceed *in forma pauperis* ("IFP") (D.E. 1). Plaintiff thereafter withdrew his IFP motion (*see* D.E. 9), and on 10 July 2014 filed a complaint (D.E. 13). He amended his complaint as of right on 18 July 2014. (*See* Am. Compl. (D.E. 17)).

In his amended complaint, plaintiff alleges as follows: He established Yelverton Farms in 1994 as a pig farm in connection with a production contract he entered into with Maxwell Foods, Inc./Goldsboro Hog Farms, Inc., companies affiliated with Smithfield Foods, Inc.

("production contract"). (Am. Compl. ¶ 1). Plaintiff personally invested over $700,000.00 and signed the production contract, which required him to provide management oversight and assure performance under the contract. (*Id.* ¶¶ 2, 3). Edmundson was an officer of Yelverton Farms, but not a signatory to the production contract. (*Id.* ¶¶ 5, 7).

In November of 2007, plaintiff obtained a $360,000.00 loan from a business partner, Wade H. Atkinson, Jr. ("Atkinson"), in connection with a security agreement wherein plaintiff pledged 1,333.3 shares of stock in Yelverton Farms as collateral. (*Id.* ¶ 6). In April of 2008, Atkinson was represented by the law firm White & Allen, P.A. ("White & Allen"), the firm representing defendants in the instant proceeding. (*Id.* ¶ 8). White & Allen recorded on Atkinson's behalf a Uniform Commercial Code lien in North Carolina for the stock pledged by plaintiff. (*Id.*).

Plaintiff filed for Chapter 11 bankruptcy on 14 May 2009. (*Id.* ¶ 10). Plaintiff scheduled the same 1,333.3 shares of stock in Yelverton Farms as property of his estate, but after the action was converted to a Chapter 7 proceeding, the Trustee did not accept possession of the stock as property, and Edmundson was permitted to retain possession of it. (*Id.* ¶ 10). Plaintiff also scheduled the production contract as property of the debtor estate, although he later exempted it. (*Id.* ¶ 10).

The lease of the land upon which Yelverton Farms operates expired on 31 December 2013, and Edmundson, as president and controlling stockholder, refused to renew the lease. (*Id.* ¶¶ 15, 16). Plaintiff contends that renewal was essential to the business operations and Edmundson's refusal was done with the intent to destroy the value of Yelverton Farms. (*Id.* ¶ 16). Plaintiff has not been provided with profits from Yelverton Farms' 2012 tax year to which he is entitled. (*Id.* ¶ 25).

Plaintiff asserts claims in his amended complaint for: (1) malicious interference with and conversion of the production contract and malicious interference with his prospective business relations by Edmundson (*id.* ¶¶ 47-48); (2) breach of fiduciary duty by Edmundson (*id.* ¶¶ 49-50); (3) unfair and deceptive trade practices by Edmundson (*id.* ¶¶ 51-52); (4) judicial receivership of Yelverton Farms (*id.* ¶¶ 53-55); and (5) declaratory judgment (*id.* ¶¶ 56-59). Defendants filed a motion (D.E. 31) to dismiss plaintiff's amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, which is currently pending before the court.

## DISCUSSION

### I. APPLICABLE LEGAL PRINCIPLES

The question of whether counsel should be disqualified is a matter within the discretion of the district court. *Hepburn v. Workplace Benefits, LLC*, No. 5:13–CV–441–BO, 2014 WL 1513157, at *2 (E.D.N.C. 16 Apr. 2014) (citing *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996)); *see also Reeves v. Town of Cottageville,* No. 2:12-cv-2765-DCN, 2014 WL 4231235, at *1 (D.S.C. 26 Aug. 2014) ("'A motion to disqualify counsel is a matter subject to the court's general supervisory authority to ensure fairness to all who bring their case to the judiciary for resolution.'" (quoting *Clinton Mills, Inc. v. Alexander & Alexander, Inc.*, 687 F. Supp. 226, 228 (D.S.C. 1988)). A court's determination of whether to disqualify counsel must be based upon "a proper application of applicable ethical principles," but the "drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel . . . and that they always remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145-46 (4th Cir. 1992). "In considering such a

motion, a court must balance '(1) the right of a party to retain counsel of his choice; and (2) the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system.'" *Hepburn*, 2014 WL 1513157, at *2 (quoting *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 514, 517 (M.D.N.C. 1996)); *Johnson v. Brock & Scott, PLLC*, No. 5:11-CV-474-F, 2012 WL 4483916, at *7 (E.D.N.C. 27 Sept. 2012). The moving party bears a high burden of proof and may not rely on mere speculation for its contentions. *Johnson*, 2012 WL 4483916, at *7; *see also In re Legacy Development SC Group, LLC,* ___ B.R.___, 2014 WL 4473876, at *2 (Bankr. D.S.C. 10 Sept. 2014); *Blaney v. Charlotte-Mecklenburg Hosp. Authority,* No. 3:10–CV–592–FDW–DSC, 2011 WL 4074421, at *3 (W.D.N.C. 13 Sept. 2011) ("In order to avoid the potential for abuse, the Fourth Circuit has held that disqualification for violations of an ethical canon 'may not be rested on mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur.'" (quoting *Shaffer*, 966 F.2d at 145)).

## II.     DISQUALIFICATION MOTION

Plaintiff argues that there exist two conflicts of interest that require White & Allen to be disqualified: first, a conflict of interest between the two defendants and, second, a conflict of interest between White & Allen's former client Atkinson and defendants. Plaintiff grounds his contentions in the North Carolina Revised Rules of Professional Conduct, which this court has adopted as the ethical standards governing the practice of law in this court. Local Civ. R. 83.1(j), E.D.N.C. The court will address each contention in turn.

### A.     Alleged Conflict between Defendants

Rule 1.7(a) provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." N.C. Rev. R. Prof'l Conduct 1.7(a). One

circumstance in which a concurrent conflict of interest exists is if "the representation of one client will be directly adverse to another client." N.C. Rev. R. Prof'l Conduct 1.7(a)(1). Thus, a lawyer "may not act as an advocate in one matter against a person the lawyer represents in some other matter." *Johnson*, 2012 WL 4483916, at *8 (quoting Comment 6, N.C. Rev. R. Prof'l Conduct 1.7(a)). It follows, of course, that a lawyer may not act as an advocate against a person whom he represents in the same matter.

Here, plaintiff argues that White & Allen's representation of both defendants presents a concurrent conflict of interest because defendants' interests in this case are adverse. Plaintiff contends, in effect, that while purportedly pursuing the interests of each particular defendant as a client, White & Allen is simultaneously working against that defendant's interests by representing the other defendant in this case. Plaintiff cites a 16 January 1987 ethics opinion from the North Carolina State Bar providing that a law firm cannot simultaneously represent minority shareholders in a derivative action *on behalf of a corporation* and the corporation's landlord in a suit *against the corporation* for back rent. (N.C. State Bar Advisory Op. RPC 18 (16 Jan. 1987) (cited in the Ethics Op. Notes to Rule 1.7)).

Plaintiff's contention fails most basically because he has not demonstrated that the interests of the defendants are materially adverse with respect to this litigation. In particular, he has not shown that Edmundson's actions are or have been detrimental to Yelverton Farms. Significantly, the defendants deny any adversity in interest with respect to this litigation.

Moreover, despite plaintiff's reliance on the advisory opinion, none of the claims he asserts appear to qualify as stockholders' derivative claims on behalf of Yelverton Farms. *See* Fed. R. Civ. P. 23.1.[1] Moreover, defendants have put forth evidence that calls into question

---

[1] Fed. R. Civ. P. 23.1, which sets forth requirements for derivative actions, provides:

whether plaintiff even still owns the 1,333.3 shares of Yelverton Farms stock, as he alleges, and thereby whether he could even bring such a claim. Specifically, defendants cite to an order from a prior action in this court in which it was determined that any such claim plaintiff may have had was an asset of the bankruptcy estate and subject to the terms of a settlement agreement approved by the bankruptcy court, as well as an order from a case in the United States District Court for the District of Columbia affirming the bankruptcy court's settlement of claims. (*See* D.E. 31-2 (6 Mar. 2011 Order (DE. 120), *Stephen Thomas Yelverton. v. Yelverton Farms, Ltd.*, No. 5:09-CV-331-FL (E.D.N.C.)); D.E. 31-4 (6 Aug. 2014 Order (D.E. 20), *In re Stephen Thomas Yelverton*, No. 1:13-cv-1544-CRC (D.D.C.)). For this and the other reasons stated, the court rejects the first ground advanced by plaintiff for his disqualification motion and concludes that White & Allen's representation of defendants does not violate Rule 1.7(a).

### B.     Alleged Conflict between Atkinson and Defendants

Under Rule 1.7(a)(2), a second circumstance under which a concurrent conflict of interest exists is if "the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client, *a former client*, or a third person, or by a personal interest of the lawyer." N.C. Rev. R. Prof'l Conduct 1.7(a)(2) (emphasis added). In a similar vein, Rule 1.9(a)

---

(a) Prerequisites. This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

(b) Pleading Requirements. The complaint must be verified and must:
(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
(3) state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(a), (b).

Case 5:14-cv-00365-FL   Document 64   Filed 11/18/14   Page 6 of 8

provides that a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." N.C. Rev. R. Prof'l Conduct 1.9(a).

Plaintiff argues that White & Allen's representation of defendants presents a concurrent conflict of interest in violation of Rule 1.7(a)(2), as well as a violation of Rule 1.9(a), because Atkinson's interests with respect to acquisition of the lien in 2008 on plaintiff's 1,333.3 shares of Yelverton Farms stock conflicts with the interests of Edmundson as the controlling stockholder of Yelverton Farms and the interests of Yelverton Farms itself. White & Allen, as noted, represented Atkinson in obtaining the lien. Thus, the argument goes, White & Allen's prior representation of Atkinson materially limits its representation of defendants and is also impermissible because it would prejudice Atkinson.

But Atkinson himself has submitted an affidavit specifically renouncing any interest he may have had in the shares of plaintiff's stock. (Atkinson Aff. (D.E. 27-2) ¶ 3). In addition, White & Allen asserts that its representation of Atkinson was limited solely to obtaining the lien on that stock. (Defs.' Mem. (D.E. 36) ¶ 18). Plaintiff has failed to otherwise show that White & Allen's prior representation of Atkinson involves the same or substantially related subject matter as the claims in this litigation.

The court concludes that White & Allen's representation of defendants does not violate Rule 1.7(a)(2) or Rule 1.9(a).[2] The court will therefore deny plaintiff's motion for

---

[2] While plaintiff invokes other provisions of the North Carolina Revised Rules of Professional Conduct in support of his motion for disqualification, the court's rulings set out above moot them. For example, plaintiff cites Rule 1.7(b), which specifies circumstances in which a lawyer may represent a client even if such representation presents a concurrent conflict. That provision is inapplicable because the court has found that no concurrent conflict exists. Plaintiff also argues that White & Allen's representation violates Rule 1.10(a), but it simply provides, generally stated, that if a lawyer is disqualified from a representation under Rule 1.7 or Rule 1.9, any other lawyer in the same firm is as well. This provision is inapplicable, of course, because the court has found the grounds advanced for

7

disqualification in its entirety. *See Hepburn*, 2014 WL 1513157, at *3 (denying motion to disqualify where party had "not satisfied its high burden to show that [counsel] should be disqualified or that plaintiff's choice of counsel would in some way erode the public trust in the judicial system."); *Reeves*, 2014 WL 4231235, at *5 (denying motion to disqualify where party asked "the court to rely on a series of inferences that have no factual basis" which is "precisely the sort of speculative, specious claim rejected by the [Fourth Circuit]").

## III.     MOTIONS FOR A HEARING

As is evident from the court's ability to reach a determination on plaintiff's disqualification motion on the basis of the parties' filings, it finds that a hearing on the motion would not aid the decisional process. Plaintiff's motions for a hearing will therefore be denied.

### CONCLUSION

For the foregoing reasons, IT IS ORDERED that plaintiff's motion to disqualify defense counsel (D.E. 27), first motion for a hearing (D.E. 39), and second motion for a hearing (D.E. 44) are DENIED.

This 17th day of November 2014.

James E. Gates
United States Magistrate Judge

---

disqualification meritless. In any event, the court's analysis was not limited solely to any particular attorney or attorneys at White & Allen, but encompassed all attorneys at the firm.