IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-365-FL

| | | |
|---|---|---|
| STEPHEN THOMAS YELVERTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| YELVERTON FARMS, LTD. and | ) | |
| PHYLLIS Y. EDMUNDSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on defendants' motion to dismiss (DE 31), and plaintiff's

motions to amend (DE 41) and for determination of the ownership of stock (DE 70). These motions

are ripe for review. For the reasons that follow, the court denies plaintiff's motions, and grants

defendants' motion to dismiss.

## STATEMENT OF THE CASE

Plaintiff is a resident of Arlington County, Virginia. Defendant Phyllis Y. Edmundson

("Edmundson") is a North Carolina resident, and defendant Yelverton Farms, Ltd. ("Yelverton

Farms") is a North Carolina closely-held corporation. Acting *pro se*, plaintiff, himself a lawyer,

filed his complaint on July 10, 2014 (DE 13). He amended his complaint as of right on July 18,

2014. (Am. Compl.) (DE 17). Plaintiff asserts seven claims in this family based dispute: 1)

malicious interference with contract by defendant Edmundson; 2) conversion by defendant

Edmundson; 3) malicious interference with prospective business relations by defendant Edmundson;

4) breach of fiduciary duty by defendant Edmundson; 5) unfair and deceptive trade practices by

defendant Edmundson, in violation of N.C. Gen. Stat. § 75-1.1 *et seq.*; 6) a demand for judicial receivership of defendant Yelverton Farms, pursuant to N.C. Gen. Stat. §§ 55-14-30(2)(i), (ii), and (iv) and 3(ii); 55-14-31; and 55-14-32; and 7) a request for declaratory judgment and associated injunctive relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

Defendants filed the instant motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on August 11, 2014. Plaintiff filed a response in opposition to defendants' motion to dismiss on September 5, 2014. Defendants filed reply two weeks later, and plaintiff filed a sur-reply on September 25, 2014. Plaintiff filed the instant motion to amend eight days following the filing of defendants' motion to dismiss, attaching a proposed second amended complaint. ("2d Am. Compl."). Response and reply likewise have been submitted on this motion. In addition, plaintiff filed the pending motion for determination of stock ownership in defendant Yelverton Farms on January 12, 2015 (DE 70), to which defendants responded February 11, 2015, and plaintiff replied February 19, 2015. It is to these motions that the court's attention now is drawn.[1]

## BACKGROUND

The facts alleged in the amended complaint may be summarized as follows. Plaintiff established defendant Yelverton Farms, Ltd. ("Yelverton Farms") in 1994 to operate a pig farm in Wayne County. Plaintiff personally entered into a production contract (Production Contract) with Maxwell Foods, Inc. ("Maxwell Foods") and Goldsboro Hog Farms, Inc. ("Goldsboro Hog Farms"), related to the pig farm's operations. The Production Contract required plaintiff "to provide management oversight of the operation, and to assure performance by [the operation]." (Am. Compl., ¶ 3). Plaintiff personally invested at least $700,000 to build facilities for the operation of

---

[1] Also pending is a motion for summary judgment filed by plaintiff on September 22, 2014 (DE 54), briefing on which the court has ordered to be stayed pending resolution of the instant motion to dismiss.

2

the pig farm on land leased to defendant Yelverton Farms by defendant Edmundson.[2]  Defendant Edmundson was president and controlling stockholder of Yelverton Farms, but not a signatory to the Production Contract.  Rather, according to plaintiff, "as Principal [of the Production Contract, he], delegated to Edmundson and to Yelverton Farms, Ltd., some management duties under the Production Contract, as his Agent."  (Id. ¶ 5).

In November 2007, plaintiff obtained a $360,000 loan from a business partner, Wade H. Atkinson, Jr. ("Atkinson"), in connection with a security agreement wherein plaintiff pledged 1,333.3 shares of his stock in defendant Yelverton Farms as collateral.  A Uniform Commercial Code lien was recorded in North Carolina for the stock pledged by plaintiff.

Plaintiff filed for Chapter 11 bankruptcy on May 14, 2009, in the District of Columbia.[3]  He scheduled the pledged 1,333.3 shares of stock in defendant Yelverton Farms as property of his estate.  However, according to plaintiff, after the action was converted to a Chapter 7 proceeding, the trustee "failed to accept possession of the stock as property of the Estate," and defendant Edmundson "acted to retain possession of the stock as her being owner."  (Id. ¶ 10).  The Production Contract was also originally scheduled as property of the estate, but subsequently exempted.

The lease of the land upon which defendant Yelverton Farms operated expired on December 31, 2013, and defendant Edmundson, both as president and controlling stockholder of defendant Yelverton Farms (the lessee), and owner of the land (the lessor), refused to renew the lease.

---

[2] Although not alleged in the complaint, and although not a fact material to decision here, the court notes filings in other cases identifying defendant Edmundson as defendant's sister.  Yelverton v. Webster, No. 1:13-CV-1544, at 1 (D.D.C. Aug. 6, 2014) (DE 31-4).

[3] Bankruptcy Petition Case No. 1:09-BK-414.  The proceeding shall hereinafter be referred to as the "Bankruptcy Proceeding."

According to plaintiff, defendant Edmundson refused in order to destroy the value of defendant Yelverton Farms, where renewal of the lease was essential to its business operations.

In late January 2014, plaintiff, "as the sole holder of the Production Contract, received from an experienced and financially qualified operator a 'letter of interest' to acquire the pig production facilities [previously operated by] Yelverton Farms, Ltd., for some $1.2 Million, exclusive of the surrounding land." (Id. ¶ 17). The letter of interest was subject to defendant Edmundson renewing with defendant Yelverton Farms the lease of land upon which the pig production facilities previously operated. Plaintiff presented the letter to defendant Edmundson and offered to share the proceeds from a sale with her, but defendant Edmundson rejected the proposal in March 2014. According to plaintiff, defendant Edmundson rejected the proposal "because she wanted all the proceeds from a $1.2 Million sale of the pig production facilities for herself." (Am. Compl., ¶ 19). Defendant Edmundson's refusal was "to the financial detriment of [plaintiff's] equity interest in the corporation and as holder of the Production Contract, and would be to the financial detriment of Atkinson, as a U.C.C. lien holder on the stock" that plaintiff pledged. (Id. ¶ 21).

Since at least April 7, 2014, defendant Edmundson "acted with the intent to have terminated" the Production Contract, by "providing negative information about [plaintiff] to Maxwell [Foods]/Goldsboro [Hog Farms]." (Id., ¶ 22). Defendant Edmundson acted in this manner "in order for her to obtain [the Production Contract] for her personal financial benefit." (Id.).

Defendant Edmundson filed federal tax returns on behalf of defendant Yelverton Farms, including a Schedule K-1 for tax year 2012. The 2012 Schedule K-1 stated that plaintiff was at least a 24.9% stockholder in defendant Yelverton Farms, and was owed at least $8,262 in declared profits from the corporation. Plaintiff has not been paid these profits. In a June 18, 2012, submission to

4

the D.C. Bankruptcy Court, defendant Edmundson represented that defendant Yelverton Farms is "financially troubled, is insolvent, [and] has <u>no</u> funds to pay [plaintiff], or any stockholder, what is owed to them in declared profits." (<u>Id.</u> ¶ 26).

According to plaintiff, defendant Edmundson has "intentionally acted to cause 'injury' to [plaintiff] by her making continuing claims on and after March 17, 2010, and through the present, in this and other Federal proceedings that Atkinson is or may be the owner of stock in Yelverton Farms, Ltd., which had the effect of unnecessarily delaying and multiplying the Federal proceedings to the detriment of [plaintiff], and resulted in an unfair litigation advantage to [defendant] Edmundson and her co-Defendants." (<u>Id.</u> ¶ 56).

Plaintiff's proposed second amended complaint reiterates the allegations and claims above, but adds a second request for declaratory judgment, pursuant to 28 U.S.C. § 2201, "as to whether Atkinson became a stockholder in Yelverton Farms, Ltd., prior to May 14, 2009." (2d Am. Compl., ¶ 60) (DE 41-1). Further, the proposed amendment requests that, "if Atkinson is determined to be a stockholder in the corporation . . . he be named a Plaintiff in this proceeding." <u>Id.</u>

The court takes judicial notice of certain matters not made clear in the complaint.[4]  In addition to the Bankruptcy Proceeding noted above, where numerous orders have issued from both the United States Bankruptcy Court for the District of Columbia ("D.C. Bankruptcy Court") and the United States District Court for the District of Columbia ("D.C. District Court"), plaintiff's record of litigation includes  a suit previously filed in this court July 9, 2009, against both defendants, among others. <u>See</u> <u>Yelverton v. Webster</u>, No. 5:09-CV-331-FL, at 1 (E.D.N.C. March 7, 2011)

---

[4] The court takes judicial notice of these facts pursuant to Federal Rule of Evidence 201.  On a motion to dismiss, courts "may properly take judicial notice of matters of public record."  <u>Philips v. Pitt Cnty. Mem'l Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009).

("Yelverton I").  In Yelverton I, plaintiff sought judicial dissolution and liquidation of defendant Yelverton Farms, a compelled payment of dividends, appointment of a receiver to protect the rights and interests of plaintiff and his creditors, and a claim for unpaid land rent.  Id. at 2.  In addition, plaintiff brought claims against defendant Edmundson for a breach of contract claim to purchase plaintiff's stock in August, 2007; malicious interference with plaintiff's contractual relationships and prospective contractual relationships to sell his shares in 2008; and acting in restraint of trade or commerce in 2007.  Id.

In the course of this prior litigation, defendant Edmundson submitted an affidavit, dated August 20, 2009, which plaintiff references and relies upon in the Amended Complaint.  (Am. Compl. ¶ 14); see Yelverton v. Webster, 5:09-CV-311, (Edmundson Aff.) (Dkt. 56-2).[5]  In the affidavit, defendant  Edmundson alleged that plaintiff "has been treated the very same as all other shareholders in Yelverton Farms."  (Id.  ¶ 9).  She alleged that she was

> aware of her fiduciary duties as a shareholder and director in a closely held corporation.  In acknowledgment of those fiduciary duties, she has dealt with Plaintiff honestly and fairly at all times and provided him access to whatever information he desired by virtue of his status as a shareholder in Yelverton Farms.

 (Id. ¶ 10).

The court ultimately held that plaintiff lacked standing to assert these claims, as they became property of the bankruptcy estate upon conversion of the Bankruptcy Case from Chapter 11 to Chapter 7.  Yelverton I, at 6-8.  The court directed the trustee to file a notice of substitution as plaintiff.  Id. at 10.  Following the trustee's substitution, the parties advised the court that they had settled all matters in controversy and the case was dismissed.

---

[5]  To distinguish docket entries in Yelverton I from docket entries in the instant proceeding, the court uses the designation "Dkt." for entries in Docket No. 5:09-CV-311, and the designation "DE" for the instant proceeding.

In another proceeding in the Superior Court for Wayne County, North Carolina, Case No. 13-CVS-1543, plaintiff filed an amended complaint against defendant Edmundson and Deborah Marm[6] ("Wayne County Case"). Following hearing, the court issued order dated April 4, 2014, granting defendants' motions to dismiss and motion for judgment on the pleadings. See (Defs.' Ex. 15) (DE 31-16).

## COURT'S DISCUSSION

A.     Motion to Amend

After a party has already amended a pleading once, as here, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. This is a "liberal rule" intended to give effect to the "federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006). "[I]f the underlying facts or circumstances relied upon by a [party] may be a proper subject for relief, he ought to be afforded an opportunity to test his claims on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962).

"[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber, 438 F.3d at 426 (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir.1986)). A district court may be justified in denying a motion to amend if the proposed amended claim "could not withstand a motion to dismiss." Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995).

---

[6]  Marm has also been identified in court filings as plaintiff's sister. Yelverton v. Webster, No. 1:13-CV-1544, at 1 (D.D.C. Aug. 6, 2014).

In this case, the court must deny plaintiff's motion to amend for futility. Article III of the Constitution limits the judicial power to the adjudication of "Cases" or "Controversies." MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 137 (2007). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests," as well as "a real and substantial controversy as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. at 138. "[N]o controversy exists when a declaratory judgment plaintiff attempts to obtain a premature ruling on potential defenses that would typically be adjudicated in a later actual controversy." Id. at 139.

In his second amended complaint, plaintiff seeks a judicial declaration as to whether Atkinson became a stockholder in defendant Yelverton Farms prior to May 2009 (2d Am. Compl. ¶ 60) (DE 41-1). Plaintiff alleges that, in Yelverton I, defendant Edmundson claimed that Atkinson "is, or may be, the owner of stock in Yelverton Farms, Ltd., and she repeated this claim in other Federal proceedings, and did so to unnecessarily delay and multiply these proceedings to gain a litigation advantage and to obtain a personal financial benefit." (Id. ¶ 30). He also refers to an affidavit that Atkinson executed on March 28, 2014. (Id. ¶ 31). In this affidavit, which defendants attach as Exhibit 8 to their motion to dismiss, Atkinson alleges that, in an adversary proceeding before the U.S. Bankruptcy Court for the District of Columbia, Atkinson "renounced any interest that I might have in [the 1,333.3 shares of stock] in favor of Mr. Yelverton." (Atkinson Aff., ¶ 3) (DE 31-9).

There is, however, no indication that defendants have raised an issue regarding Atkinson's ownership of stock in this proceeding. Rather, plaintiff is attempting to obtain a "premature ruling" on a "potential defense." MedImmune, 549 U.S. at 137. As no actual "controversy" is presented

8

under Article III, the court lacks jurisdiction over that claim at this time. Because the court lacks jurisdiction to rule upon the claim that plaintiff seeks to add through amendment, the motion to amend is futile.

Moreover, under the Declaratory Judgment Act, the authority of federal district courts to hear declaratory judgment cases is discretionary, not mandatory, and they are afforded "great latitude in determining whether to assert jurisdiction" over such cases. United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir.1998) (quoting Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co., 139 F.3d 419, 422 (4th Cir.1998)). The Fourth Circuit has established a number of general rules to guide its district courts—including the directive that courts should not allow the Declaratory Judgment Act to be used "to interfere with an action which has already been instituted." Ellis v. La.-Pac. Corp., 699 F.3d 778, 787 (4th Cir. 2012); Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir.1996).

Plaintiff alleges that the issue of Atkinson's ownership of stock in defendant Yelverton Farms has been litigated in other cases. (2d Am. Compl. ¶ 30). Further, stock ownership has been litigated in plaintiff's Bankruptcy Proceeding, which is ongoing. See, e.g., In re Yelverton, No. 09-414, at 9, n.3 (D.D.C. Aug. 6, 2014) (noting that plaintiff's stock was property of the bankruptcy estate); In re Yelverton, No. 09-414, at 3-7 (Bankr. D.C. Jan. 23, 2014) (addressing arguments as to whether stock in defendant Yelverton Farms was an asset of the property of the estate). The court also notes that Atkinson has not appeared as a party in this case, although plaintiff submitted an affidavit by Atkinson in support of his motion for determination of stock ownership. (Dec. 11, 2014, Atkinson Aff., ¶ 4) (DE 70-1). Thus, plaintiff's proposed amendment is essentially an attempt to circumvent the prohibition on third-party standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 563 (1992) (noting that the "injury in fact" test of standing "requires that the party seeking

9

review be himself among the injured."); <u>Doe v. Public Citizen</u>, 749 F.3d 246, 259 (4th Cir. 2014) (noting as an element of standing "the general prohibition on a litigant's raising another person's legal rights."). Given these considerations, the court in the alternative declines to assert any jurisdiction that may exist over plaintiff's declaratory judgment claim.

Accordingly, because the court finds it lacks jurisdiction over the claim that plaintiff seeks to add through his amendment, and because the court would decline to exercise its discretion to assert jurisdiction over this claim in any event, plaintiff's motion to amend is denied.

B.      Motion for Determination of Ownership of Stock

Plaintiff also moves that the court determine the ownership of stock in defendant Yelverton Farms, pursuant to 28 U.S.C. § 2201. Plaintiff's motion is styled as a motion pursuant to Rule 57, which provides that the Federal Rules of Procedure likewise govern the rules for obtaining a declaratory judgment. Plaintiff's motion is an attempt to obtain declaratory judgment without amending his complaint to seek such relief, as required by Rule 15. Because plaintiff has already amended his pleading once, he may only amend it again "with the opposing party's written consent or the court's leave." Rule 15(a)(2). Plaintiff does not show consent, and has not properly moved to amend the pleading. Accordingly, plaintiff's motion is denied.

C.      Motion to Dismiss

Defendants move to dismiss all of plaintiff's claims on the basis of lack of standing, or alternatively on the basis of *res judicata* or collateral estoppel. In addition, defendants assert in part that plaintiff has failed to make necessary allegations to support a claim for relief. Standing is generally associated with Rule 12(b)(1), pertaining to subject matter jurisdiction. <u>CGM, LLC v. BellSouth Telecomm., Inc.</u>, 664 F.3d 46, 52 (4th Cir. 2011). As explained further below, some of

defendants' claims do indeed fail to allege facts which would satisfy standing concerns. However, defendants' arguments also implicate the merits of plaintiff's cause of action, rather than the court's statutory or constitutional power to adjudicate the case, and therefore properly must be considered as a failure to state a claim on which relief may be granted. See Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 89 (1998) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case . . . jurisdiction is not defeated by the possibiity that the averments might fail to state a cause of action on which petitioners could actually recover.") (quotation marks, ellipses and brackets omitted); Pitt Cnty. v. Hotels.com, L.P., 553 F.3d 308, 312-13 (4th Cir. 2009) (explaining differences between standing inquiry and merits of claims). As such, proper analysis falls under Rule 12(b)(6).

     1.     Standard of Review

          a.     Rule 12(b)(1)

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the plaintiff, in effect, is afforded the same procedural motion as he would receive under a Rule 12(b)(6) consideration." Id. "[A]ll facts

11

alleged in the complaint are assumed true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).

When the defendant challenges the factual predicate of subject matter jurisdiction, a court "may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations" without converting the matter to summary judgment. Adams, 697 F.2d at 1219; Kerns, 585 F.3d at 192. "Where the jurisdictional facts are intertwined with the facts central to the merits of the dispute . . . the entire factual dispute is appropriately resolved only by a proceeding on the merits," and Rule 12(b)(1) is "an inappropriate basis" to grant dismissal. Adams, 697 F.2d at 1219-20. Rather, the court "should ordinarily assume jurisdiction" and "resolve relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." Kerns, 585 F.3d at 193.

b.     Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement

at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. <u>Twombly</u>, 550 U.S. at 556.

In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, on a motion to dismiss" under Rule 12(b)(6). <u>Clatterbuck v. City of Charlottesville</u>, 708 F.3d 549, 557 (4th Cir. 2013). However, courts may properly take judicial notice of matters of public record. <u>Philips</u>, 572 F.3d at 180. In addition, courts may consider documents attached to the complaint, or attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." <u>Id.</u> When a plaintiff does not challenge the authenticity of a document attached to the defendant's motion to dismiss, the court may presume the document is authentic. <u>Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 234 (4th Cir. 2004).

When considering a Rule 12(b)(6) motion, a court must keep in mind the principle that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)); <u>Noble v. Barnett</u>, 24 F.3d 582, 587 n.6 (4th Cir.1994). Nevertheless, <u>Erickson</u> does not undermine the requirement that a pleading contain "more than labels and conclusions." <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 555). Furthermore, while a *pro se* complaint must be construed liberally, it

is not the court's obligation "to discern the unexpressed intent of the plaintiff." Laber, 438 F.3d at 413 n. 3.

2.    Analysis

a.    Declaratory Judgment and Injunctive Relief

Plaintiff seeks in part declaratory judgment "that if Edmundson and her co-Defendants [sic] fail to renounce and withdraw their claims made in Case No. 5:09-CV-331 and in other Federal proceedings, that Atkinson is or may be the owner of stock in Yelverton Farms, Ltd., that a Declaratory Judgment be granted declaring that Atkinson shall have Article III 'standing' and be allowed the right of Joinder as a co-Plaintiff in this proceeding." (Am. Compl. ¶ 57). Plaintiff also brings an associated claim for injunctive relief, pursuant to 28 U.S.C. § 2202, to "enjoin Edmundson and her co-Defendants, and any other persons, from interfering with Atkinson's pursuit of his interests with respect to Yelverton Farms, Ltd." (Id., ¶ 58).

For the reasons explained above with respect to plaintiff's motion to amend, the court lacks jurisdiction to issue a declaratory judgment as to this claim, where no controversy is yet apparent as to Atkinson's stock ownership in this case. See MedImmune, 549 U.S. at 137. Moreover, even if a controversy existed, the court would decline to assert jurisdiction for the same reasons discussed above. Kapiloff, 155 F.3d at 493; Lujan, 504 U.S. at 563. The court thus grants defendants' motion to dismiss and dismisses plaintiff's claims for declaratory and injunctive relief.

b.    All Claims: *Res Judicata*/Collateral Estoppel

Defendants generally argue that all of plaintiff's claims are barred by the preclusion doctrines of *res judicata* or collateral estoppel. *Res judicata* and collateral estoppel are analyzed under Rule 12(b)(6) as a failure to state a claim on which relief may be granted. See Davani v. Va. Dep't of

14

Transp., 434 F.3d 712, 720 (4th Cir. 2006) (analyzing *res judicata* and collateral estoppel under Rule 12(b)(6)). Both of these doctrines are affirmative defenses. Ga. Pac. Consumer Prods., LP v. Von Drehle Corp., 710 F.3d 527, 533 (4th Cir. 2013). As such, defendants bear the burden of showing their proper application. S. Appalachian Mountain Stewards v. A&G Coal Corp., 758 F.3d 560, 569 (4th Cir. 2014) ("As with any [affirmative] defense, the defendant bears the burden of proving that it may validly advance it."); Allen v. Zurich Ins. Co., 667 F.2d 1162, 1165 (4th Cir. 1982) ("The burden is on the party asserting collateral estoppel to establish its predicates.").

As an initial matter, however, defendants' memorandum only provides analysis as to the matter of *res judicata*, sometimes referred to as claim preclusion. Defendants offer no argument as to how collateral estoppel, also referred to as issue preclusion, should apply to this case. The court will not grant dismissal on a bare assertion of collateral estoppel. See Allen, 667 F.2d at 1165 ("The burden is on the party asserting collateral estoppel to establish its precidates.").

*Res judicata* provides that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153 (1979). The elements include "(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." Andrews v. Daw, 201 F.3d 521, 524 (4th Cir. 2000). When entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact. Id., at 524, n. 1. The defense "may be raised under Rule 12(b)(6) only if it clearly appears on the face of the complaint." Id. at 524, n. 1(quotation marks omitted). The doctrine also bars "the relitigation of claims that . . . could have been raised in the prior litigation." Pittston Co. v. United States, 199 F.3d

15

Case 5:14-cv-00365-FL   Document 73   Filed 02/26/15   Page 15 of 31

694, 704 (4th Cir. 1999). However, "[r]es judicata does not bar claims that did not exist at the time of the prior litigation." Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991). Typically, a new factual development gives rise to a fresh cause of action. See Union Carbide Corp. v. Richards, 721 F.3d 307, 315 (4th Cir. 2013). The preclusive effect of federal court judgments are determined by federal common law. Taylor v. Sturgell, 553 U.S. 880, 891 (2008).

First, defendants argue that "Plaintiff lacks standing because this Court previously ruled [in the March 2011 Order] that after the conversion of Plaintiff's Chapter 11 Bankruptcy to Chapter 7, that Plaintiff lacked standing to pursue the claims asserted in his prior lawsuit individually and as a shareholder." (Memo. In Support of Mot. To Dismiss, 3) (DE 33). Defendants offer no specific analysis of the legal elements of standing or how a previous ruling from this court establishes a lack of standing in this case.

The court's ruling in Yelverton I was based on an application of bankruptcy law to the claims asserted in that case, which, as noted above, concerned events prior to July 9, 2009. Yelverton I, at 1. The court noted that the law provides that, upon commencement of a bankruptcy case, an estate arises which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Id., at 5 (quoting 11 U.S.C. § 541(a)(1)). Moreover, the court noted that " 'property of the estate' has uniformly been interpreted to include causes of action existing at the time the bankruptcy action commences." Id. (citing Bogdan v. JKV Real Estate Servs., 414 F.3d 507, 512 (4th Cir. 2005)). In Chapter 7 bankruptcy cases, the trustee, acting as representative of the estate, succeeds to all causes of action held by the debtor, and "the debtor no longer has standing to pursue a cause of action which existed at the time the Chapter 7 petition was filed." Id. at 6.

The court's ruling in <u>Yelverton I</u> applied to the claims raised in that case. From the pleadings, arguments and documents before it, the court cannot determine that there is "an identity of the cause of action" in this suit with the cause of action in <u>Yelverton I</u>, where this cause of action appears to rest largely on events which allegedly took place in 2014. The court does not find that <u>Yelverton I</u>, in itself, deprives plaintiff's standing to bring his claims in this case.

Next, defendants make a general reference to <u>Yelverton I</u> in that order's association with orders issued in plaintiff's Bankruptcy Proceeding approving of settlements to argue that all of plaintiff's claims are barred by *res judicata*. Defendants also cite generally to several motions that plaintiff filed in the Bankruptcy Proceeding to argue that plaintiff has previously raised his claims, and that the D.C. Bankruptcy and D.C. District Courts ruled adversely against him. Plaintiff's earlier attack on the settlement agreement, however, was based on factual allegations that preceded the allegations in the instant complaint. Again, the court cannot determine on the present record that these claims were resolved by the previous orders in the Bankruptcy Proceeding. Defendants have failed to carry their burden.

Defendants also argue that the order in the Wayne County Case is *res judicata* as to plaintiff's claims in this case. Federal courts must give the same preclusive effect to a state court judgment as the forum that rendered the judgment. <u>Sartin v. Macik</u>, 535 F.3d 284, 287 (4th Cir. 2008). North Carolina applies *res judicata* when there is (1) a final judgment on the merits in an earlier suit, (2) both cases involve the same cause of action, and (3) the new claim involves the same parties as the earlier suit, or their privies. <u>Whitaker v. Nash-Rocky Mount Bd. of Educ.</u>, 474 F. App'x 912, 913 (4th Cir. 2012) (citing <u>State ex rel. Tucker v. Frinzi</u>, 344 N.C. 411 (1996)). North Carolina courts have adopted a "modified form" of the "transactional" approach to *res judicata*.

Whitaker, 474 F. App'x at 913; Davenport v. N.C. Dep't of Transp., 3 F.3d 89, 93-97 (4th Cir. 1993). While these state courts have recognized that "mere differences in legal theories of claim or defense, or in remedies sought, or in evidence produced don't create 'different' claims . . . the courts also have reflected all along considerable skittishness about routinely giving the transactional approach the widest application conceptually possible." Davenport, 3 F.3d at 95 (citations omitted); see Bockweg v. Anderson, 333 N.C. 486 (1993).

Defendants do not direct the court to where the state court action decided the claims that plaintiff brings in this case, or explain how this action constitutes a mere difference in "legal theories," "remedies sought," or "evidence produced," Davenport, 3 F.3d at 95, rather than remedies for separate and distinct acts. The court finds defendants have failed their burden of showing *res judicata* under North Carolina's application of this doctrine. See A&G Coal, 758 F.3d at 569.

Having resolved defendants' arguments seeking dismissal of all plaintiff's claims as a general matter, the court proceeds to specific analysis of each remaining claim.

      c.     Individual Claims

As noted above, defendants argue that plaintiff lacks standing, and suggest plaintiff has failed to allege sufficient facts for each of his claims. On these bases, the court addresses each claim in turn.

      i.     Malicious Interference with Contract

North Carolina recognizes a cause of action for tortious intereference with contract. See Embree Constr. Grp., Inc. v. Rafcor, Inc., 330 N.C. 487, 498 (1992). The elements of this claim include:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the

contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

Id. Plaintiff alleges that he was party to a purported "Production Contract" with Maxwell Foods/Goldsboro Hog Farms. (Am. Compl. ¶ 3). However, the only allegation regarding the terms of this contract is that plaintiff "is required by the Contract to provide management oversight of the [pig production] operation, and to assure performance by it." (Id.). Plaintiff does not allege any contractual right that he possessed against Maxwell Foods/Goldsboro Hog Farms by virtue of Production Contract, as is required. Nor do the allegations establish that Maxwell Foods/Goldsboro Hog Farms have actually been induced not to perform under the contract. Rather, plaintiff alleges that defendant Edmundson "has *acted with the intent* to have terminated [plaintiff's] Production Contract" (Am. Compl. ¶ 22) (emphasis added); that she "has no justification *to intend to cause* the termination" of the Production Contract, (Id., ¶ 45) (emphasis added), and that defendant Edmundson maliciously interfered "in *acting* to have [the Production Contract] terminated." (Id., ¶ 47) (emphasis added). Plaintiff does not affirmatively allege that the Production Contract has actually been terminated or that Maxwell Foods/Goldsboro Hog Farms have failed to perform an obligation. It is not the court's role "to discern the unexpressed intent of the plaintiff." Laber, 438 F.3d at 413 n. 3; see Austin Maintenance & Constr., Inc. v. Crowder Constr. Co., 742 S.E. 2d 535, 547 (N.C. Ct. App. 2012) (granting summary judgment against tortious interference claim based on Master Services Agreement ("MSA") upon finding that the MSA "conferred no contractual rights on Plaintiff until the execution of a specific Purchase Order" and because plaintiff "failed to adduce any evidence that [the third party] failed to perform any of its obligations under the MSA.").

19

Accordingly, plaintiff has failed to state a claim on which relief can be granted regarding defendant Edmundson's alleged interference with the Production Contract, and this claim is dismissed.

ii.     Conversion

"There are, in effect, two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 365 N.C. 520, 523 (2012). Conversion applies only to personal property or goods, not to intangible interests such as business opportunities and expectancy interests. Flexible Foam Prods., Inc. v. Vitafoam, Inc., 980 F. Supp. 2d 690, 700 (W.D.N.C. 2013); United States v. Gaskins, 748 F. Supp. 366, 370 (E.D.N.C. 1990). An "intangible asset" is "an asset that is not a physical object." Edmondson v. Am. Motorcycle Ass'n, Inc., 7 F. App'x 136, 148 (4th Cir. 2001) (citing Black's Law Dictionery 113 (7th ed. 1999)); Flexible Foam Prods., 980 F. Supp. 2d at 700. "Money may be the subject of an action for conversion *only* when it is capable of being identified and described as a specific chattel." Alderman v. Inmar Enters., Inc., 201 F. Supp. 2d 532, 548 (M.D.N.C. 2002). "In order to be identified and describe[d] as a specific chattel, the general rule is that the money must be segregated from other funds or kept in a separate bank account and not commingled with the alleged converter's other funds." Id.; see also Wooten v. CL, LLC, No. 2:09-CV-34-FL, 2010 WL 3767308, at *7 (E.D.N.C. Sept. 27, 2010).

Plaintiff alleges that defendant Edmundson's actions were performed "to be able to take for herself the Production Contract and all proceeds from a sale of the pig production facilities." (Am. Compl. ¶ 47). Plaintiff's conversion claim appears to concern two interests – plaintiff's Production Contract and his investment in the pig production facilities. There are no allegations that defendant

20

Edmundson actually took the physical document constituting the Production Contract. Rather, as noted, the allegations only state that defendant Edmundson "acted" to have the Production Contract terminated. This does not state a claim for conversion. To the extent plaintiff alleges a conversion of proceeds from the sale of the pig production facilities, he effectively alleges conversion of a "business opportunity" which is not subject to conversion under North Carolina law. <u>Flexible Foam Prods.</u>, 980 F. Supp. 2d at 700; <u>Gaskins</u>, 748 F. Supp. at 370. So far as plaintiff alleges a conversion of his own $700,000 monetary investment in the facilities, nothing in the complaint indicates that the money invested "is capable of being identified and described as a specific chattel." <u>Alderman</u>, 201 F. Supp. 2d at 548. Accordingly, plaintiff's claim for conversion of the Production Contract must be dismissed for failure to state a claim.

      iii.      Malicious Interference with Prospective Business Relationships

North Carolina also recognizes a tort action for interference with prospective economic advantage. <u>See</u> <u>Owens v. Pepsi Cola Bottling Co. of Hickory, N.C.</u>, 330 N.C. 666, 680 (1992). To bring a claim, a plaintiff must allege that 1) a valid contract would have existed between plaintiff and a third party but for defendant's conduct; 2) defendant maliciously induced the third party to not enter into the contract; and 3) defendant thereby proximately caused plaintiff to suffer actual damages. <u>Cobra Capital, LLC v. RF Nitro Commc'ns, Inc.</u>, 266 F.Supp.2d 432, 439 (M.D.N.C.2003) (citing <u>Spartan Equip. Co. v. Air Placement Equip. Co.</u>, 263 N.C. 549, 559 (1965)). A plaintiff must further show that the defendant acted "for a reason not reasonably related to the protection of a legitimate business interest." <u>Id.</u>

This claim must also be dismissed, as plaintiff has failed to show that a valid contract would have existed between plaintiff and a third party but for the conduct of defendant Edmundson. The

complaint alleges only that plaintiff "received from an experienced and financially qualified operator a 'letter of interest' to acquire the pig production facilities at Yelverton Farms, Ltd., for some $1.2 Million." (Am. Compl., ¶ 17).[7] The mere receipt of a letter expressing an interest in purchasing is insufficient to show that a valid contract would have existed between plaintiff and a third party. Plaintiff himself makes no express allegation that such a contract would have existed, and even if he did make such an allegation, it would be an unwarranted inference on the facts alleged. <u>Nemet Chevrolet</u>, 591 F.3d at 256. Accordingly, plaintiff has failed to state a claim based on defendant Edmundson's alleged interference with prospective business relations.

iv.     Breach of Fiduciary Duty

Plaintiff next claims that defendant Edmundson breached her fiduciary duties to plaintiff and to the corporation when she failed to renew the lease to the corporation, for the purpose of taking ownership of the pig production facilities. "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." <u>Green v. Freeman</u>, 367 N.C. 136, 141 (2013). Such relationship "may arise when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." <u>Id.</u>

The precise nature of plaintiff's alleged fiduciary relationship with defendant Edmundson is unclear. The complaint raises several potential sources of such a duty, including through the Production Contract, through plaintiff's alleged status as a shareholder, or through plaintiff's alleged status as a creditor to the corporation. The court analyzes each in turn.

---

[7] Defendants have submitted a document that they allege to be the "letter of interest." (Def.'s Reply in Supp., Ex. 4) (DE 52-4). This document contains a series of emails exchanged between plaintiff and an individual named Bob Ivey. However, the email exchanges are dated March 13 and 14, 2014. (<u>Id.</u>). Because the complaint does not refer to a March 2014 "letter of interest," this document cannot be considered integral to the complaint.

Plaintiff alleges that he "as Principal, delegated to Edmundson and to Yelverton Farms, Ltd., some management duties under the Production Contract, as his Agent." However, the allegations that plaintiff was a "Principal" and defendant Edmundson was his "Agent," are mere legal conclusions which the court is not obligated to accept. Nemet Chevrolet, 591 F.3d at 256. The facts alleged fail to show that such an agency relationship existed.

> Consent of both principal and agent is necessary to create an agency. The principal must intend that the agent shall act for him, the agent must intend to accept the authority and act on it, and the intention of the parties must find expression either in words or conduct between them.

Ellison v. Hunsinger, 237 N.C. 619, 628 (1953); see also Devlin v. Wells Fargo Bank, N.A., No. 1:12-CV-388, 2014 WL 1155415 (W.D.N.C. March 21, 2014) ("[A]n agency arises when parties manifest consent that one shall act on behalf of the other and subject to his control.") (quoting Bauer v. Douglas Aquatics, Inc., 207 N.C. App. 65, 74 (2010) (quotation marks omitted). Plaintiff's allegations show a unilateral delegation of "some management duties under the Production Contract." (Am. Compl., ¶ 5). However, he alleges that defendant Edmundson "is not a signatory to this Contract." (Id. ¶ 4). The complaint fails to show that defendant Edmundson actually accepted plaintiff's authority, or any manifestation of consent to an agency relationship regarding the Production Contract. Consequently, the bare assertion defendant Edmundson was plaintiff's agent is insufficient to show that an agency relationship existed between defendant Edmundson and plaintiff.

Next, plaintiff suggests he was owed fiduciary duties as a shareholder in defendant Yelverton Farms. Here, the allegations are insufficient to show that plaintiff was in fact a stockholder at the time of the events in question. As noted in Yelverton I, upon commencement of a bankruptcy case, a bankruptcy estate arises which includes "all legal or equitable interests of the debtor in property

as of the commencement of the case." 11 U.S.C. § 541(a)(1). Once property enters the estate, it remains property of the estate until it has been exempted by the debtor under § 522, abandoned by the trustee under §554, or disposed of by the trustee under § 363. In re Pullman, 319 B.R. 443, 445 (Bankr. E.D. Va. 2004). Otherwise, it is abandoned to the debtor at the time the case is closed. Id.

Property of the estate includes causes of action. Bogdan, 414 F.3d at 512. In Chapter 7 bankruptcy cases, the trustee, acting as representative of the estate, succeeds to all causes of action held by the debtor, and "the debtor no longer has standing to pursue a cause of action which existed at the time the Chapter 7 petition was filed." Yelverton I, at 6 (quoting Bluemark, Inc. v. Geeks on Call Holdings, Inc., No. 2:09-CV-322, 2010 WL 28720 (E.D. Va. Jan. 5, 2010)); see also Detrick v. Panalpina, 108 F.3d 529, 535 (4th Cir. 1997); Miller v. Pac. Shore Funding, 287 B.R. 47, 50-51 (D. Md. 2002) ("[T]he moment the Millers filed their bankruptcy petition on January 16, 2001, all their interests in the instant cause of action became property of the bankruptcy estate. Unless the Millers can show that the claim was exempt from the estate or abandoned by the trustee, they have no standing to bring or pursue it—only the trustee may do so.").

Furthermore, the property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of a bankruptcy case." Brogdan, 414 F.3d at 512 (citing 11 U.S.C. § 541(a)(7)). It also includes all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). In addition, property that is "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start" may be regarded as property of the bankruptcy estate. Segal v. Rochelle, 382 U.S. 375, 380 (1966).

In some instances, courts have held that legal claims based on rights regarding property that has entered the estate belong to the bankruptcy estate, even if the claims themselves do not accrue until after the debtor files for bankruptcy. In <u>Field v. Transcontinental Ins. Co.</u>, 219 B.R. 115 (E.D. Va. 1998), the trustee of the Chapter 7 bankruptcy estate brought suit against the debtor's insurance company, claiming that the company acted in bad faith in refusing to defend and indemnify the debtor following an automobile accident. <u>Id.</u> at 117. The accident occurred four months prior to the debtor's bankruptcy petition. <u>Id.</u> at 119. The company argued that the trustee lacked standing because the company did not deny the request for indemnification until over eight months after the debtor had filed for bankruptcy, and therefore that the cause of action did not accrue until after the bankruptcy estate had arisen. <u>Id.</u> at 118. The court held that the debtor's right to coverage arose with the accident, and therefore that the bad faith claim was "sufficiently rooted in [the debtor's] pre-bankruptcy past." <u>Id.</u> at 119. Alternatively, it held that the policy existed prior to the filing of the bankruptcy petition, and thus that any rights the debtor had pursuant to that policy became property of the estate upon the filing of the bankruptcy petition. <u>Id.</u> at 120.

Similarly, in <u>Chartschlaa v. Nationwide Mut. Ins. Co.</u>, 538 F.3d 116 (2d Cir. 2008), the debtor's personal representative brought suit against an insurance company for the company's termination of its agency agreements with the debtor. <u>Id.</u> at 119-120. The agency agreements predated the debtor's Chapter 7 bankruptcy petition, but the company did not terminate the agreements until after the petition was filed. <u>Id.</u> The court held that the agreements were property of the bankruptcy estate, and, because the claims asserted arose from the agreements, those claims were also property of the bankruptcy estate and could not be brought by the debtor's personal representatives. <u>Id.</u> at 123; <u>see also</u> <u>Gache v. Hill Realty Assocs., LLC</u>, No. 13-CV-1650, 2014 WL

5048336, at *6 (S.D.N.Y. Sept. 22, 2014) (plaintiff's claims for fraud regarding sale of estate property related to the proceeds or profits from estate property, and therefore became property of the estate).

The complaint presents a muddled picture of the status of plaintiff's shares of stock. First, plaintiff alleges that he obtained a loan from Atkinson, and "pledged as collateral [plaintiff's] 1,333.3 shares of stock in Yelverton Farms, Ltd." (Am. Compl. ¶ 6). He also alleges that Atkinson recorded a U.C.C. lien in North Carolina on the 1,333.3 shares of stock. Id. On May 14, 2009, plaintiff filed for Chapter 11 Bankruptcy, and scheduled his 1,333.3 shares of stock as property of the bankruptcy estate. Nevertheless, plaintiff further alleges that, "after conversion to Chapter 7 on August 20, 2010, the Trustee failed to accept possession of the stock as property of the Estate, and where Edmundson acted to retain possession of the stock as her being owner." (Id. ¶ 10). Later, in 2012, defendant Edmundson allegedly filed tax returns "wherein it was acknowledged that Yelverton _is_ at least a 24.9% stockholder in Yelverton Farms, Ltd." (Id., ¶ 25) (emphasis added).

Given the law recited above concerning how the property of the debtor becomes property of the estate, the facts alleged do not establish that plaintiff would have standing to bring this claim. Plaintiff does not allege that he ever properly exempted the property from the estate. To the extent he suggests that the trustee abandoned the stock, such allegation is contradicted by the public record of the Bankruptcy Proceeding, which shows that, on March 23, 2012, the trustee reached a settlement agreement which transferred the bankruptcy estate's shares to defendant Edmundson and Deborah Marm, in exchange for a lump sum payment of $110,000. (Defs'. Ex. 7) (DE 31-8).[8] At

---

[8] The court takes judicial notice of this settlement for the fact that it was filed, thereby showing that the trustee did not abandon the property. "Courts routinely take judicial notice of documents filed in other courts, not for the truth of the matters asserted but rather to establish the fact of such litigation and related filings." Veteran Constructors, Inc. v. Beeler Barney & Assocs. Masonry Contractors, Inc., No. 2:13-CV-64-F, 2014 WL 199238, at *3 (E.D.N.C. Aug. 22, 2014)

most, the allegations may support a potential conflict regarding the ownership of the 1,333.3 shares of stock between Atkinson, the trustee of the bankruptcy estate, and/or defendant Edmundson. They do not show that plaintiff himself could claim a fiduciary relationship regarding that stock; especially not at the time of the events in question. Accordingly, plaintiff has failed to allege sufficient facts to support a breach of fiduciary duty premised on being a shareholder in defendant Yelverton Farms.

Alternatively ,plaintiff lacks standing to bring this claim. As noted above, plaintiff cannot assert the rights of a third person. Lujan, 504 U.S. at 563; Public Citizen, 749 F.3d at 259. In order to establish subject matter jurisdiction, plaintiff must show standing to assert his claims. See Long Term Care Partners, L.L.C. v. United States, 516 F.3d 225, 230 (4th Cir. 2008). The allegations do not show that plaintiff has standing to assert claims arising from stock that became property of the bankruptcy estate. Accordingly, such claim must be dismissed under Rule 12(b)(1).

The final potential ground for breach of fiduciary duty rests in plaintiff's alleged status as a creditor to defendant Yelverton Farms. Such claim rests on the allegations that plaintiff "personally and individually invested in 1994 at least $700,000, to build the required infrastructure for the automated 'pig finishing' operation," (Am. Compl. ¶ 3), and also that he "is owed at least $8,262 in declared profits from the corporation" (Id. ¶ 25). With respect to the pig production facilities, however, plaintiff does not allege that he himself owned these facilities. Rather, plaintiff refers to these facilities as "the facilities of Yelverton Farms, Ltd., which [plaintiff] funded." (Id. ¶ 3). Plaintiff does not allege sufficient facts regarding the terms of his investment to show that he

---

(quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) (brackets and quotations omitted). In addition, the settlement and its approval are matters of public record. See In re Yelverton, No. 09-BK-414 (D.D.C. Aug. 6, 2014).

retained an interest in the $700,000 invested, in order to establish that a fiduciary relationship existed with defendant Edmundson regarding that investment.

Moreover, to the extent plaintiff had any legal or equitable interest in the $700,000 he invested in 1994, the allegations show that such interest would have become property of the bankruptcy estate in 2009. 11 U.S.C. § 541(a)(1). A claim arising from this property, or rights regarding this property, would also become property of the bankruptcy estate, as it is "sufficiently rooted in the pre-bankruptcy past" and not "entangled with the bankrupts' ability to make an unencumbered fresh start." Segal, 382 U.S. at 380; see also Chartschlaa, 538 F.3d at 123; Field, 219 B.R. at 119. In addition, a claim for the proceeds of sale from that property would also be property of the estate. 11 U.S.C. § 541(a)(6).

Turning to plaintiff's claim that he is owed $8,262 in declared profits, the allegation is premised on a Schedule K-1 that defendant Yelverton Farms filed for tax year 2012. (Defs'. Ex. 6) (DE 31-7). The document consists of three "parts." Part I, "Information About the Corporation," identifies defendant Yelverton Farms, along with its corporate employer identification number and address. (Id., 2). Part II, "Information About the Shareholder," provides plaintiff's identifying number, address, and percentage of stock ownership for the tax year. (Id.). Part III, "Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items," includes a number of boxes for information. Box 1, titled "Ordinary business income (loss)," is filled in with the number 8,262. (Id.). Plaintiff alleges that he has not been paid the money "owed" to him. (Am. Compl. ¶ 25).

Again, plaintiff's factual allegations are insufficient to state a claim for relief in light of available public documents. The factual allegations, along with the public record, establishes that plaintiff did not hold an ownership interest in the 1,333 shares after filing for bankruptcy in 2009.

28

As such, proceeds from this property are also property of the estate. 11 U.S.C. § 541(a)(6). The mere fact that defendant Edmundson reported plaintiff as a shareholder in tax documents does not change this conclusion, as it does not demonstrate that any of the conditions occurred which would have allowed plaintiff to reassert ownership over the stock or its proceeds. Plaintiff does not allege that he obtained additional stock after filing for bankruptcy. Because the factual allegations and public documents show that the stock became property of the estate by 2009, plaintiff's claim that he is personally entitled to income generated by that stock for tax year 2012 lacks sufficient support. Alternatively, plaintiff lacks standing to bring claims for amounts allegedly owed him, because those amounts were property of the estate.

Accordingly, because plaintiff has failed to sufficiently allege a basis for a fiduciary relationship between himself and defendant Edmundson, plaintiff's claim for a breach of that duty must be dismissed.

v.    Unfair and Deceptive Trade Practices

The Unfair and Deceptive Trade Practices Act provides that "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001).

Plaintiff's claim that defendant Edmundson violated the unfair and deceptive trade practices act rests on the allegations that defendant Edmundson refused to renew the lease of land to the corporation and interfered with plaintiff's Production Contract and prospective business

relationships. Because the allegations are insufficient to show that plaintiff had any interest regarding the affairs of defendant Yelverton Farms as of the time that the lease expired, to show that plaintiff held any rights held under the Production Contract, to show that a contract for the purchase of the pig production facilities would have been consummated, or to show that plaintiff had an interest in the pig production facilities, the complaint fails to show that defendant Edmundson's acts proximately caused plaintiff injury. Accordingly, this claim must be dismissed.

vi.    "Judicial Receivership"

Plaintiff's final claim demands that defendant Yelverton Farms, Ltd., be placed into Receivership, pursuant to sections 55-14-30(2) and (3), 55-14-31, and 55-14-32 of the North Carolina General Statutes. Section 55-14-30(2) relates to proceedings brought by a shareholder. N.C. Gen. Stat. § 55-14-30(2). Section 55-14-30(3) relates to proceedings brought by a creditor to the corporation. N.C. Gen. Stat. § 55-14-30(3). Sections 55-14-31 and 55-14-32 provide the procedures for dissolution and appointment of a receiver, respectively, and do not grant the right to seek dissolution or receivership to additional parties beyond shareholders or creditors.

As explained above, the complaint fails to establish that plaintiff is either a creditor to or a shareholder in the corporation. Accordingly, the statute does not authorize plaintiff to seek dissolution or receivership. This matter implicates statutory standing, which "concerns whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action." CGM, 664 F.3d at 52. It is properly analyzed under Rule 12(b)(6). Id. at 51-52. Plaintiff's claim for receivership is therefore dismissed under Rule 12(b)(6).

**CONCLUSION**

Based on the foregoing, plaintiff's motions to amend (DE 41) and for a determination of stock ownership (DE 70) are DENIED. The court GRANTS defendants' motion to dismiss (DE 31), and all of plaintiffs' claims are DISMISSED for failure to state a claim upon which relief can be granted. Plaintiff's motion for summary judgment (DE 54) is DISMISSED as moot. The clerk is hereby DIRECTED to close this case.

SO ORDERED, this the 25th day of February, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge

31